IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARC NORFLEET, ) | |
| No. R57214, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-01279-SMY |
| ) | |
| ILLINOIS DEPT. OF CORRECTIONS, ) | |
| PATRICK KEANE, ) | |
| GLADYSE C. TAYLOR, and ) | |
| SHERRY BENTON, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Marc Norfleet is a wheelchair bound inmate currently housed in Pinckneyville Correctional Center. Plaintiff brings this action for deprivations of his constitutional rights and statutory violations related to the conditions of his confinement. His claims stem from being housed in a four-person cell with another wheelchair bound inmate and two non-disabled inmates.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-

27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, the Illinois Department of Corrections ("IDOC"), IDOC Director Gladyse C. Taylor,[1] IDOC Administrative Review Board ("ARB") Chairperson Sherry Benton, and IDOC ADA Compliance Officer Patrick Keane, in their individual and official capacities, implemented a policy and practice of overcrowding "ADA cells." Plaintiff contends the defendants thereby violated his Eighth Amendment rights, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

In Plaintiff's situation at Pinckneyville, he and another wheelchair-bound inmate are housed in a cell with two non-disabled inmates. There is inadequate floor space for the four, and the wheelchair bound inmates cannot maneuver around the cell. Having four inmates in the cell proportionally reduces Plaintiff's access to the one sink and toilet (forcing Plaintiff to urinate into a laundry detergent container). The crowded cell, and hygiene issues particular to the wheelchair bound inmates, cause friction and even physical altercations among the cellmates. The non-disabled abused the wheelchair bound, who could not exit the cell or maneuver to a call

---

[1] Taylor has, at various times served as acting director of the IDOC. At this early juncture the Court need not get into Taylor's various roles in prison administration during the time frame relevant to this case, which appears to be from approximately October 2014 to the present.

button to summon help. On occasion, the non-disabled inmates even removed Plaintiff's wheelchair from the cell, leaving him helpless. Plaintiff contends the defendant IDOC officials were aware of applicable prison regulations and their statutory obligations to disabled inmates, but they intentionally, and with deliberate indifference, implemented the overcrowding policy and failed to remedy the situation when Plaintiff filed an administrative grievance.

It is further alleged that Director Taylor and ARB Chairperson Sherry Benton intentionally deprived Plaintiff of his right to pursue his administrative ADA grievance (No. 01-124-15, dated Nov. 29, 2014), when they denied the grievance, finding it meritless (*see* Doc. 1, pp. 18-21). As a result, the grievance was never presented to ADA Compliance Officer Keane. "Defendants" also prevented a 2010 grievance from being exhausted when they deemed it untimely, "thus deliberately retaliating against Plaintiff for exercising Plaintiff's First Amendment right to institutional grievance process" (Doc. 1, p. 15). Plaintiff seeks a "preliminary injunction-temporary restraining order," permanent injunctive relief, declaratory judgment, along with compensatory and punitive damages.[2]

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment when they knowingly and with deliberate indifference forced Plaintiff to live in an overcrowded cell;
>
> **Count 2:** Defendants intentionally forced Plaintiff to live in an overcrowded cell in violation of the ADA and Rehabilitation Act;

---

[2] Plaintiff references "official capacity" and "individual capacity" within his prayer for relief in a way that makes clear he is unaware of the import of those phrases. In recognition of his pro se status, the complaint will be construed liberally and the available remedies will be addressed.

> Count 3: By assigning the wheelchair-bound Plaintiff to an overcrowded cell, Defendants violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment; and
>
> Count 4: The denial of Plaintiff's (a) November 2014 grievance and (b) 2010 grievance violated the First Amendment.

Any other intended claim that has not been recognized by the Court should be considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Discussion

### Count 1

Count 1 is premised upon that allegations that all four defendants—the IDOC and three of its administrators, Director Taylor, ARB Chairperson Benton, and ADA Compliance Officer Keane, in their individual and official capacities—intentionally and with deliberate indifference house Plaintiff in an overcrowded cell. As a result, Plaintiff's mobility is hindered, access to the toilet and sink are hindered or diminished, and he is subjected to harassment and physical abuse at the hands of his non-disabled cellmates.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. Const., amend. VIII. *See also Berry v. Peterman,* 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, encompassing health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz,* 680 F.3d 984 (7th Cir. 2012). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). As a general matter, the allegations in the complaint

regarding Plaintiff's conditions of confinement and safety issues all fall within the ambit of the Eighth Amendment. However, that does not end the analysis.

The Eighth Amendment claim against the IDOC is barred because the IDOC, as an arm of the State of Illinois, is not considered a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Greenawalt v. Ind. Dep't of Corr.,* 397 F.3d 587 (7th Cir. 2005). Thus as a matter of law, Plaintiff is limited to bringing his Eighth Amendment claim for money damages against the named IDOC officials in their individual capacities. Director Taylor may also remain as a defendant to Count 1 in her official capacity for purposes of effecting any injunctive relief ordered.

Relative to the claims against Taylor, Benton and Keane in their individual capacities, a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). Consequently, the doctrine of *respondeat superior*—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001)). The complaint asserts that Taylor, Benton and Keane had knowledge of the situation and whether each of those defendants was individually involved is a question for another day.

The Eighth Amendment claims in Count 1 shall proceed against Defendants Taylor, Benton and Keane in their individual capacities for monetary damages, and against Taylor in her official capacity for purposes of any injunctive relief that may be granted.

### Count 2

Count 2 is premised upon the same allegations that underpinned Count 1 regarding the policy and practice of overcrowding Plaintiff and other wheelchair bound inmates in a cell. However, the claims asserted against the IDOC and Director Taylor, ARB Chairperson Benton, and ADA Compliance Officer Keane (in their individual and official capacities) are based on Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* The ADA and Rehabilitation Act prohibit discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability.

In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago,* 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a). *Novak v. Bd. of Trustees of S. Ill. Univ.,* 777 F.3d 966, 974 (7th Cir. 2015).

The ADA applies to state prisons, *Penn. Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1998), and all such institutions receive federal funds. *Jaros v. Illinois Dept. of Corrections,* 684 F.3d 667 (7th Cir. 2012). Thus, the two statutory schemes are applicable to this situation. Plaintiff is confined to a wheelchair because of his back impairment and radiculopathy, therefore he has a disability as defined in the ADA and Rehabilitation Act. In *United States v. Georgia,* 546 U.S. 151 (2006), the Supreme Court concluded that a disabled inmate can sue the State for money

damages under Title II of the ADA for "deliberate refusal of prison officials to accommodate [the inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" if the conduct in question also constitutes deliberate indifference in violation of the Eighth Amendment prohibition against cruel and unusual punishments. *Id.* at 157–159.  The Seventh Circuit has also recognized that access to certain housing facilities, including showers, toilets and sinks in a prison setting, are among the programs and activities protected by the ADA and the Rehabilitation Act.  *Jaros,* 684 F.3d at 672; *see also Phipps v. Sheriff of Cook County,* 681 F.Supp.2d 899, 916 (N.D.Ill. 2010); *Pennsylvania Department of Corrections v. Yeskey,* 524 U.S. 206 (1998).  Plaintiff's need for an accommodation seems "obvious" and sufficient to impute that knowledge to prison officials. *See Robertson v. Las Animas County Sheriff's Department,* 500 F.3d 1185, 1196–98 (10th Cir. 2007); *Kiman v. New Hampshire Department of Corrections,* 451 F.3d 274, 283 (1st Cir. 2006). Furthermore, Plaintiff's 2014 grievance was reviewed by Director Taylor (*see* Doc. 1, p. 21). Consequently, Count 2 generally states colorable ADA and Rehabilitations Act claims, but that does not end the analysis.

Although Plaintiff has named a number of officials in connection with the factual allegations supporting this claim, the only proper defendant in a claim under the ADA or RA is the state agency (or a state official acting in his or her official capacity).  "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros,* 684 F.3d at 670 (additional citations omitted).  Plaintiff has included the Illinois Department of Corrections ("IDOC") as a named defendant, and it would be duplicative and unnecessary to include any other individual defendants in this count, even in their official capacity.  Count 2 shall therefore proceed against

the IDOC only for compensatory damages and injunctive relief, but not punitive damages. Defendants Taylor, Benton and Keane are dismissed with prejudice from Count 2.

### Count 3

In Count 3 it is alleged that Defendants housing Plaintiff in an overcrowded cell violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The complaint does not specify how Plaintiff was denied his right to due process, so the Court construes the claim as being premised upon the denial of Plaintiff's November 2014 grievance. Merely "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007; *see also McGee v. Adams,* 721 F.3d 474, 485 (7th Cir. 2013). Furthermore, state grievance procedures do not create a substantive liberty interest protected by the Fourteenth Amendment's Due Process Clause. *See Grieveson v. Anderson,* 538 F.3d 763, 772 (7th Cir. 2008). Absent a protectable liberty interest, there is no right to procedural due process. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). Consequently, the due process claim within Count 3 will be dismissed without prejudice.

The equal protection claim appears to stem from the general fact that, for every inmate added to a cell the space and opportunity to use the sink and toilet diminish. In addition, when an inmate is in a wheelchair, the general calculus is altered for determining when a cell is "overcrowded."

The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences.

It implies that a decision[-]maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group. *Nabozny v. Podlesny,* 92 F.3d 446, 453–54 (7th Cir. 1996) (quoting *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982)). There is also a second type of equal protection claim, a so-called "class-of-one" claim. *Engquist v. Oregon Dep't of Agriculture,* 553 U.S. 591, 601 (2008), and *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000), make clear that a class-of-one equal protection claim can succeed only if it is pleaded and proven that (1) the plaintiff has been intentionally treated differently from others similarly situated, and (2) there is no rational basis for different treatment.

Regardless of which legal theory is relied upon, Plaintiff's equal protection claim is nothing more than a conclusory legal assertion. No intentional discrimination or animus has been alleged. Moreover, Plaintiff only perceives that he and the other wheelchair bound cellmate are "overcrowded." In fact, under Plaintiff's proportionality theory, all four cellmates would have less space and opportunity to utilize the sink and toilet. Therefore, the equal protection aspect of Count 3 will be dismissed without prejudice.

In the event Plaintiff contemplates amending the complaint to re-plead the due process and equal protection claims, he should review the analysis of Count 1 regarding personal involvement, the differences between individual capacity and official capacity liability, and the availability of certain remedies.

### Count 4

Count 4 asserts First Amendment claims regarding: (a) Plaintiff's November 2014 grievance, which was denied on the merits—something Plaintiff thinks was aimed at denying him access to the Courts; and (b) the rejection of a 2010 grievance as untimely, which Plaintiff

perceives as retaliation. The First Amendment protects the right to "petition the Government for redress of grievances" (U.S. Const., amend. I)—commonly referred to as an "access to courts" claim. In addition, an act taken in retaliation for the exercise of a constitutionally protected right violates the First Amendment. *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000). A prisoner's non-frivolous grievance is deemed protected activity under the First Amendment. *Hasan v. U.S. Dep't of Labor,* 400 F.3d 1001, 1005 (7th Cir. 2005).

With respect to the denial of the 2014 grievance on its merits, no colorable First Amendment Claim has been stated. If denying a grievance by itself were a constitutional violation, all grievances would have to be granted. Although 42 U.S.C. § 1997e(a) requires exhaustion of administrative remedies prior to filing suit, if administrative remedies are unavailable, for example, if prison officials fail to respond to grievances, then no administrative remedies are available to exhaust. *See Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002) (administrative remedies are exhausted if prison officials fail to respond to grievances). The 2014 grievance was addressed by Director Taylor and ARB Chairperson Benton—Plaintiff merely disagrees with their assessment.

The claim regarding the 2010 grievance is similarly infirm. First, under any possible calculation the claim falls outside the applicable two-year statute of limitations. Furthermore, The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002). Therefore, if an inmate fails to follow the prescribed grievance procedures, his claims will not be considered to be

exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.  Insofar as Plaintiff characterizes the denial of his 2010 grievance as retaliation, he offers no more than that bare assertion—merely because he filed a grievance, it was rejected.

Out of an abundance of caution, Count 4 will be dismissed without prejudice, although it seems unlikely that this claim can be salvaged.  Again, in contemplating amendment, Plaintiff should take into consideration the analysis of Count 1 regarding personal involvement, the differences between individual capacity and official capacity liability, and the availability of certain remedies.

## Motion for Injunctive Relief

The complaint includes a request for a "Preliminary Injunction (TRO) Temporary Restraining Order" (Doc. 1, pp. 15-16), and an attached "Petition for 90-day Emergency Preliminary Injunction" (Doc. 1, p. 38).  Plaintiff seeks an immediate end to celling non-disabled inmates with wheelchair-bound inmates.  Plaintiff asserts there is an ongoing pattern of injuries, but he does not offer any specifics.  It is assumed that Plaintiff is referring to the animosity between Plaintiff and his non-disabled cellmates and the overcrowding of the cell.

Despite the reference to a temporary restraining order, it is clear that Plaintiff is seeking a preliminary injunction under Federal Rule of Civil Procedure 65. A preliminary injunction is issued only *after* the adverse party is given notice and an opportunity to oppose the motion. Fed.R.Civ.P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted).  Plaintiff twice cites that very standard.

Given that the complaint states viable claims and is proceeding, the Clerk of Court will be directed to have the record reflect that the complaint (Doc. 1) contains what is construed as a motion for preliminary injunction.  That motion will be referred to a magistrate judge for further consideration in accordance with Federal Rule of Civil Procedure 65(a).

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, the **ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC)** is **DISMISSED without prejudice** from **COUNT 1**; all official capacity claims against Defendants **SHERRY BENTON and PATRICK KEANE** are **DISMISSED with prejudice** from **COUNT 1**.  **COUNT 1** shall **PROCEED** against Defendants **PATRICK KEANE and SHERRY BENTON** in their individual capacities, and against Defendant **GLADYSE C. TAYLOR** in her individual capacity and in her official capacity for purposes of injunctive relief only.

**IT IS FURTHER ORDERED** that Defendants **GLADYSE C. TAYLOR, SHERRY BENTON and PATRICK KEANE** are **DISMISSED with prejudice** from **COUNT 2**, and the prayer for punitive damages is **DISMISSED with prejudice** from **COUNT 2**.  **COUNT 2** shall otherwise **PROCEED** against the **ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC)**.

**IT IS FURTHER ORDERED** that **COUNTS 3 and 4** are **DISMISSED without prejudice**.

The Clerk of Court is **DIRECTED** to have the record reflect that the complaint contains a motion for preliminary injunction (Doc. 1, pp. 15-16, 38).

The Clerk of Court shall prepare for Defendants:  (1) Form 5 (Notice of a Lawsuit and

Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. Consequently, Plaintiff's motion for service of process at government expense (Doc. 3) is **DENIED as moot**.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

Judge Philip M. Frazier for further pre-trial proceedings, including consideration of the motion for preliminary injunction (Doc. 1).  The motion for leave to proceed as a pauper (Doc. 2) will be addressed by the undersigned district judge by separate order.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 21, 2015**

<u>s/ STACI M. YANDLE</u>
**United States District Judge**
