IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARC NORFLEET,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-1279-SMY-DGW |
| | ) | |
| **IDOC, PATRICK KEANE, GLADYSE** | ) | |
| **TAYLOR, and SHERRY BENTON,** | ) | |
| | ) | |
| Defendants. | ) | |

# <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Pending before the Court is Defendants Benton, Keane, Taylor and the Illinois Department of Correction's ("IDOC") Motion for Summary Judgment (Doc. 125). For the following reasons, the Motion is **GRANTED IN PART and DENIED IN PART.**

## Procedural and Background Facts

Plaintiff Marc Norfleet is an inmate who uses a wheelchair for his mobility. On November 17, 2015, Norfleet filed the instant action, alleging violations of his constitutional and statutory rights while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") (Doc. 1). Norfleet's claims stem from being housed in a four-person cell with another wheelchair bound inmate and two non-disabled inmates. The Court reviewed Norfleet's Complaint pursuant to 28 U.S.C. § 1915A, and he was allowed to proceed on the following claims:

> **Count 1:** Defendants Keane, Taylor and Benton subjected Norfleet to cruel and unusual punishment in violation of the Eighth Amendment when they knowingly and with deliberate indifference forced Plaintiff to live in an overcrowded cell;
>
> **Count 2**: Defendant IDOC violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*,

when it forced Norfleet to live in an overcrowded cell.

(Doc. 5, pp. 3, 12).

Norfleet was incarcerated at Pinckneyville at all times relevant to this action (Doc. 125, ¶ 1). It is undisputed that IDOC's policies require placement of disabled inmates in ADA cells (Doc. 126, p. 10) and the ADA cells at Pinckneyville house four people (*See* Doc. 126, p. 14). It is also undisputed that the ADA cells are larger than other cells at Pinckneyville and contain grab rails near the toilets (Doc. 126-1, pp. 82-82).

Norfleet testified in deposition, however, that the cells are not in fact ADA compliant because by including the bunkbeds, four people are forced to use space that was designed for two disabled individuals (Doc. 126-1, 67:14-22). Norfleet's cell contained two bunk beds, a desk, two chairs, a toilet, sink and shelves that protrude from the wall (Doc. 126-1, pp. 70, 71, 72, 79). As a result of the additional individuals in the cell, personal property could not be properly stored and was therefore left in the middle of the floor or under the desk or sink, making those spaces inaccessible (Doc. 126-1, 72:23-75:6). As a result, Norfleet had to ask other inmates to move their belongings in order to use the toilet and sink (Doc. 126-1, 41:9-13), or at times was simply unable to access the toilet and was forced to urinate into an "empty bottle" (Doc. 1, p. 12).

On or about October 28, 2014, Norfleet was attacked by one of his non-disabled cellmates (Doc. 126-1, 48-21-49:12).[1] He alleges that this incident was a direct result of the overcrowding of the cell (Doc. 126-1, 40:7-42:23).

Norfleet admits that he never spoke with Defendants Keane, Taylor or Benton directly about the overcrowding issue (Doc. 126-1, 113:5-7; 116:18-21; 110:8-21). It is undisputed,

---

[1] While evidence exists to suggest that the incident was an accident, rather than an intentional attack, the Court is required at the summary judgment stage to view the facts in the light most favorable to the non-moving party and therefore accepts for purposes of summary judgment the incident was a result of an intentional act. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

however, that the denial of Norfleet's appeal regarding the overcrowded cell was signed by both Taylor and Benton (Doc. 153-2, p. 120). Further, Defendant Keane admitted in deposition that as the statewide ADA Compliance Officer for IDOC, he takes an active consulting role whenever an offender files a grievance stating he has an ADA issue (Doc. 153-2, 33:15-17).

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

### Eighth Amendment Conditions of Confinement

Conditions of confinement do not violate the Eighth Amendment unless they constitute in effect the "unnecessary and wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). Two elements are required to establish a violation of the Eighth Amendment due to conditions of confinement. First, the plaintiff must show that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the plaintiff must establish that the defendant had a subjectively culpable

state of mind; specifically, that the defendant was aware the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 847.

As to the first prong of the test, prison officials have a duty to provide the "basic necessities of civilized life." *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007); *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013). Adequate food and facilities to wash and use the toilet are among the necessities that must be afforded inmates. *Rhodes,* 452 U.S.at 347; *Jaros v. Illinois Department of Corrections,* 684 F.3d 667, 670 (7th Cir. 2012). However, not all restrictive or even harsh prison conditions are actionable. *Rhodes,* 452 U.S. at 347. Rather, the plaintiff must allege more than a mere discomfort or inconvenience as a result of confinement. Caldwell v. Miller, 790 F.2d 589, 601 (7th Cir. 1986).

It is undisputed that Norfleet's cell contained an ADA accessible toilet and sink (Doc. 126-1, pp. 82-82). Defendants argue that Norfleet was not denied access to the sink and toilet, but was merely inconvenienced in their use by having to ask his cell mates to move their belongings (Doc. 126, pp. 2-3). In support of their argument, Defendants rely on *Jaros v. Illinois Department of Corrections*, in which the Seventh Circuit held the Eighth Amendment was not violated because, although the inmate's use of toilets and showers was made more difficult due to the lack of grab bars, he was not actually deprived of their use. *Jaros,* 684 F.3d at 671.

Here, however, Norfleet testified that overcrowding resulting in boxes and other inmates' belongings actually blocking his access to the sink and toilet (Doc. 126-1, 41:9-13). As a result, there were times he was unable to use the toilet and was forced to urinate into an "empty bottle" (Doc. 1, p. 12) and could not use of the sink (Doc. 126-1, 90:13-16). Thus, there is evidence from which a jury could reasonably conclude that Norfleet's inability to move around the cell and access the sink and toilet caused a constitutional deprivation.

The second prong of an Eighth Amendment conditions of confinement claim requires an inmate to show Defendants were deliberately indifferent to the unconstitutional condition; that they "knew about it and could have prevented it but did not." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). Liability is based on each defendant's knowledge and action, not the actions of those they supervise. *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009).

The Seventh Circuit has rejected the idea that liability extends to every prison official who is aware of an inmate's complaints. *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009). Where a prison administrator's sole role is that of complaint examiner, they do not incur individual liability absent some other action on their part. *Fluorney v. Ghosh*, 881 F.Supp.2d 980, 990 (N.D. Ill 2012) (citing *Burks*). Additionally, an official cannot be considered to have acted with deliberate indifference where they have no authority to correct the complained of conditions. *Dixon v. Godinez,* 114 F.3d 640, 645 (7th Cir. 1997).

Norfleet has never spoken with either Defendant Benton or Defendant Taylor (Doc. 126-1, 113:5-7; 116:18-21). Benton would have been aware of Norfleet's complaint regarding the overcrowding of his cell, however, because she signed off on the denial of his appeal grieving that issue (Doc. 153-1, p. 120). That said, no evidence has been presented that Benton, as chairperson of the Administrative Review Board, had any other administrative responsibility in IDOC or was in a position to take corrective action regarding Norfleet's ADA and Section 504 complaints. The mere fact that she signed off on the denial of Norfleet's grievance is insufficient to show deliberate indifference.

Similarly, Defendant Taylor would have been aware of Norfleet's complaint regarding the overcrowding of his cell because she concurred in the denial of his appeal (Doc. 153-1, p. 120). Unlike Benton, however, Taylor did have authority to take corrective action in her role as

Director of IDOC.[2]  Something more than simple administrative review by the prison official, however, is still required to prove deliberate indifference.  *Burks,* 555 F.3d at 595 (providing examples of a complaint examiner shredding grievances without review or intervening to prevent delivery of medical care as examples where deliberate indifference might be found in an administrator responsible for grievance review).  To find as Norfleet suggests, that the simple act of signing off on a denial of an appealed grievance results in individual liability on the part of the Director of IDOC, would in effect create supervisor liability—a situation both the Supreme Court and Seventh Circuit have specifically rejected.  *Id.* at 593-94 (citing *Monell v. New York City Dept's Social Services,* 436 U.S. 658, 659 (1978)).  Therefore, there is insufficient evidence upon which a jury could find Taylor was deliberately indifferent.

For the foregoing reasons, summary judgment is **GRANTED** in favor of Defendants Benton and Taylor.

Defendant Keane argues there is no evidence he was deliberately indifferent because he was unaware of Norfleet's situation (Doc. 126, pp. 5-6).  However, during his deposition, Keane admitted that as the statewide ADA Compliance Officer for IDOC, he takes an active consulting role whenever an offender files an ADA grievance (Doc. 153-2, 33:15-17).[3]  On these facts, a jury could reasonably infer that Keane knew about Norfleet's grievance claiming the overcrowding in his cell violated his rights under the ADA and § 504 of the Rehabilitation Act, and participated in the decision to deny the grievance.  As such, unlike Defendants Benton and Taylor, evidence exists to suggest personal involvement by Keane sufficient to incur individual

---

[2] An administrator can incur liability where the administrator is aware of "a systemic lapse in enforcement of a policy critical to ensuring inmate safety" and refuses to act.  *Steidl v. Gramley,* 151 F.3d 739, 741 (7th Cir. 1998) (citing *Goka v. Bobbitt,* 862 F.2d 646, 652 (7th Cir. 1988)).

[3] Defendant Keane argues he had no duty to respond to any grievances and that failure to respond to a grievance does not in itself violate the constitution (Doc. 126, p. 6) (citing *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996)).  While true, such an argument is relevant in the due process context, here Norfleet's claim is raised under the 8th Amendment.  Thus, as stated *infra,* the issue before the Court is whether Keane was deliberately indifferent by being aware of and failing to prevent a violation of Norfleet's Eighth Amendment rights due to the conditions of his confinement.

liability.

Moreover, despite Keane's protestations to the contrary,[4] a jury could certainly find that as the statewide ADA compliance officer, Keane had the authority to take corrective action. Where an administrator is aware of a systemic problem and condones such activity, their actions are not vicarious and they can be individually liable. *Steidl,* 151 F.3d at 741. Since it is uncontested that Keane did nothing to remedy Norfleet's concerns, evidence exists upon which a jury could conclude that Keane was deliberately indifferent to Norfleet's conditions of confinement. Thus, summary judgment is **DENIED** as to Norfleet's Eighth Amendment claim against Defendant Keane.

### Federal Statutory Claims —Americans with Disabilities Act, Rehabilitation Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act prohibits any agency that receives federal funds from excluding, subjecting to discrimination, or denying the benefits of any of their programs to otherwise qualified individuals with disabilities. 29 U.S.C. § 794(a). Failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006).

A plaintiff can make out a prima facie case of discrimination under both the ADA and the

---

[4] Keane's deposition testimony was rife with statements that could lead a jury to the conclusion his testimony was not credible. For example, Keane stated in his deposition that even though he is the statewide ADA compliance officer, he has no responsibility for approving or determining accommodations (Doc. 153-2, 35:18-36:17); he was unaware of whether or not the state provides any money to the IDOC to ensure ADA compliance (Doc. 153-2, 51:16-24); could not remember who he worked with when drafting administrative directives relating to compliance with the ADA or even how many directives there are (Doc. 153-2, 23:7-24:12); and could not explain what qualified as a disability under the ADA (Doc. 153-2, 31:10-19).

Rehabilitation Act[5] by showing they: (1) suffer from a disability as defined in the statutes, (2) are qualified to participate in the program in question, and (3) were either excluded from participating in or denied the benefit of that program based on a disability. *Novak v. Bd. of Trustees of S. Ill. Univ.*, 77 F.3d 966, 974 (7th Cir. 2015) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). Defendant IDOC does not address, and therefore concedes, the first and second elements of the prima facie case for discrimination (Doc. 126, pp. 1-21). Thus the question remaining before the Court is whether Norfleet was excluded from participating in or denied the benefit of a prison program because of his disability.

Access to certain housing facilities, including toilets and sinks, are among the programs and services protected by the ADA and Rehabilitation Act (Doc. 126, p. 10). The United States Department of Justice ADA/Section 504 Design Guide (Doc. 153-2, pp. 4-16) states that inmates "need to be able to enter their cells and move around inside them, using the cells' features without assistance" (Doc. 153-2, p. 4). Also, for inmates who use wheelchairs for mobility, the DOJ requires very specific space allowances in cells to ensure inmates can move their wheelchairs through and turn around in the cell, including the requirement of clear floor or ground space (Doc. 153-2, p. 13).

Norfleet asserts that doubling the number of people in his cell resulted in boxes and other inmates' belongings blocking either the floor in the middle of the cell or the space under the desk and sink (Doc. 126-1, 41:9-13), impeding his mobility within the cell and his access to the desk, sink and toilet. He also points out that the ADA cells have only one toilet and sink that must be shared by four cellmates, as opposed to one toilet and sink being shared by two cellmates in the non-disabled cells (Doc. 126-1, 134:12-135:19). In *Jaros v. IDOC,* the Seventh Circuit found

---

[5] ADA and Rehabilitation Act claims can be analyzed together since the elements of both claims are the same, except that the Rehabilitation Act has an additional element of requiring receipt of federal funds. 29 U.S.C. § 794(a); *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 671-72 (7th Cir. 2012). Since Illinois accepts federal funds to help run its prisons, that additional element is met here. *See id.*; (Doc. 153-1, p. 86).

the inability of the disabled inmate to access prison services *on the same basis* as non-disabled inmates meant the prison had failed to provide a reasonable accommodation. 684 F.3d 667, 672 (7th Cir. 2012) (emphasis added). Thus, there is evidence in the record upon which a jury could find that IDOC discriminated against Norfleet because of his disability by failing to provide a cell in which he could use his wheelchair to access the sink, desk and toilet, and by refusing to consider him for placement in a cell where he only had to share a toilet and sink with one other person.

IDOC argues, however, that Norfleet's requested accommodation—limiting the number of inmates in his ADA cell to two—is unreasonable (Doc. 126, p. 14). In the prison context, whether an accommodation is reasonable must be judged in light of the overall institutional requirements, including security and safety concerns. *Love v. Westville Correctional Center,* 103 F.3d 558, 561 (7th Cir. 1996). Here, IDOC simply makes a blanket argument that Norfleet's requested accommodation would raise safety and security concerns, require them to overhaul their policies and procedures, and result in an overflow of the inmate population (Doc. 126, p. 14). They provide no evidence to support these broad allegations. As such, the argument fails and IDOC's motion is **DENIED**.

### Availability of Damages

Defendants also argue that Norfleet is not entitled to damages. The Supreme Court has made clear that punitive damages are not available in ADA or §504 Rehabilitation Act Claims. *Barnes v. Gorman,* 536 U.S. 181, 189 (2002). They are, however, available for Eighth Amendment violations. *Calhoun v. DeTalla,* 319 F.3d 936, 942 (7th Cir. 2003). Therefore, it is possible that Norfleet could be awarded punitive damages in relation to his Eighth Amendment claims.

As to compensatory damages, the Prison Litigation Reform Act (PLRA) § 2997(e), precludes a prisoner from bringing a claim for mental injuries unless he has also suffered a

physical injury. 42 U.S.C. § 1997e(e) (2001). Neither the PLRA nor the Seventh Circuit defines the term "physical injury." *Rahim v. Sheahan,* 2010 WL 1263493, at *9 (N.D. Ill. October 18, 2001). In applying the PLRA, district courts in the Seventh Circuit have concluded that something more than a *de minimis* physical injury is necessary, but significant physical injury is not required. *Rahim*, 2010 WL 1263493, at *9; *Arnold v. Williams*, 2010 WL 2697156, at *2 (C.D. Ill. July 7, 2010) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)); *Lynch v. Flowers Foods Specialty Grp.*, 2011 WL 3876951, at *5 (E.D. Wis. Aug. 31, 2011) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-8, (1992)).

The Court notes the evidence of physical injury in this case is thin at best. But Norfleet does allege that the overcrowding in his cell led to an altercation over his wheelchair in which he was assaulted by one of his cellmates (Doc. 126-1 40:7-42:23). The assault resulted in swelling of Norfleet's left eye, a laceration, abrasions and headaches that required medical treatment (Doc. 126-1, 48:21-49:12). Whether such evidence entitles Norfleet to an award of compensatory damages must be determined by a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986).

IDOC further argues it is entitled to summary judgment because Norfleet cannot show its actions were intentional (Doc. 126-1, p. 15). The Seventh Circuit has not addressed whether intentional discrimination is required for an award of compensatory damages in ADA and Rehabilitation cases. *Phipps v. Sheriff of Cook County,* 681 F.Supp.2d 899, 918 (N.D. Ill. Feb. 19, 2010). The Court notes, however, that several other Circuits require intentional discrimination. *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 126 (1st Cir. 2003); *Delano–Pyle v. Victoria County, Tex.,* 302 F.3d 567, 574 (5th Cir. 2002); *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 1998); *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1152–53 (10th Cir. 1999); *Wood v. President and Trustees of Spring Hill Coll. in City of Mobile,* 978 F.2d 1214, 1219–20 (11th Cir. 1992). These same courts generally apply a "deliberate indifference"

standard to determine whether the alleged discrimination was intentional. *Id.* Deliberate indifference can be inferred where there is a strong likelihood that pursuit of a policy will result in violation of a federally protected right. *Phipps,* 681 F.Supp.2d at 918.

Assuming the deliberate indifference standard applies, Norfleet has adduced enough evidence to survive summary judgment on the issue of intentional discrimination. As discussed above, Defendants were made aware of Norfleet's complaints that overcrowding was resulting in his inability to access the toilet and sink, as well as interfering with his ability to move around the cell, and did nothing to address those problems. Because evidence exists upon which a jury could find Defendants acted intentionally, the Court cannot determine as a matter of law that compensatory damages are unavailable to Norfleet. Even if Norfleet is not successful in obtaining compensatory damages, he may be entitled to punitive or nominal damages on his Eighth Amendment claim. *Calhoun v. DeTella*, 319 F.3d 936, 941-42 (7th Cir. 2003) (citing *Zehner v. Trigg,* 133 F.3d 459, 462–63 (7th Cir. 1997).[6] Thus, Defendants are not entitled to summary judgment on the issue of damages.

## Qualified Immunity

Finally, Defendants argue they are entitled to qualified immunity (Doc. 126, pp. 17-19). Qualified immunity protects government officials from liability for civil damages as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions. First, do the facts alleged by the plaintiff state a violation of a constitutional right? *Pearson*, 555 U.S. at 232; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As previously discussed,

---

[6] Defendants also allege Norfleet is not entitled to injunctive relief in this case (Doc. 126, p. 17). However, their argument is wholly insufficient as it merely states the rule and provides unsubstantiated legal claims. Southern District of Illinois Rule 7.1(d) requires all briefs contain citations to legal authority and the record. Allegations of fact not supported by citation may, in the Court's discretion, not be considered. *Id.* Thus, the Court declines to consider Defendant's argument regarding injunctive relief.

sufficient evidence exists to support a violation of Norfleet's Eighth Amendment rights, the ADA, and §504 of the Rehabilitation Act. Therefore, the first element is met. If the plaintiff has satisfied this first step, the second step is for a court to decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* In determining whether a right is clearly established, the relevant question is whether it would be clear to a reasonable individual the conduct was unlawful in the situation. *Saucier*, 533 U.S. at 202. Here, Defendants argue the law is not clearly established because there is no case law holding an ADA cell must be limited to two individuals only (Doc. 126, p. 18). But Defendants' framing of the issue misstates the legal question. The question is not whether Norfleet has a legal right to a two person cell, but rather whether the conditions in his cell resulted in unconstitutional conditions or violated federal disability laws. Further, the Seventh Circuit does not require the exact factual situation to have previously been held unlawful, for the law to be considered clearly established. *Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 620 (7th Cir. 2002) (citing *Hope v. Pelzer,* 536 U.S. 730, 740-41 (2002). It is sufficient if given the pre-existing law, the unlawfulness of the action apparent. *Id.*

The Supreme Court has held that adequate facilities to wash and use the toilet are among the necessities that must be afforded prisoners. *Rhodes,* 452 U.S. at 347. And IDOC concedes that access to certain housing facilities, including toilets and sinks, are among the programs and services protected by the ADA and Rehabilitation Act (Doc. 126, p. 10). As such, it would be clear to a reasonable individual that interfering with an inmate's ability to access such facilities creates a condition of confinement that violates the Eighth Amendment, as well as the ADA and § 504 of the Rehabilitation Act. Accordingly, Defendants are not entitled to qualified immunity.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** in favor of Defendants Taylor and Benton, but **DENIED** as to Defendants Keane and the Illinois

Department of Corrections.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Taylor and Benton and against Plaintiff at the close of this case.

**IT IS SO ORDERED.**

**DATED:  April 5, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**